## JOHN MORAN v. JOHN B. ROBERGE ET AL.

*Mortgage—Discharge—Good-faith incumbrancer—Foreclosure suit by holder of one of several notes.*

A subsequent mortgagee, who takes his mortgage in reliance upon reliable information that a prior mortgage has been discharged, will be protected if it turns out that the mortgage was in *fact* discharged.

So *held*, where a mortgage was given to secure the payment of six promissory notes, described therein as of even date with the mortgage and as payable to the mortgagees, when in fact the *sixth* note belonged and was payable to a third person, who was not named in the mortgage. The *five* notes were paid, and the mortgagor presented a petition to the proper court, under Act No. 3, Laws of 1887, in which he set forth the mortgage, and stated that the debt secured thereby had been fully paid and satisfied, and prayed for an order discharging said mortgage. The statutory certificate of discharge was entered upon the journal of the court, and a certified copy recorded in the office of the register of deeds, after which the mortgagor conveyed the land, and his grantee mortgaged it to secure a loan, which was made in reliance upon the statement of the first mortgagor as to the discharge of the mortgage by the mortgagees, and the loss of the discharge, and upon an examination of the proceedings in the circuit court for its dis-

---

[1] He claimed under tax titles, as well as under the execution sale.

charge. A suit was brought by the holder of the sixth note to foreclose the mortgage to satisfy said note, in which the first mortgagor and the assignee of the second mortgage were made defendants, and the record of the proceedings above mentioned was introduced in evidence. The first mortgagor testified that he obtained a discharge of the mortgage about a year after it was given through a certain attorney, who delivered it to him as such discharge, and that it purported to be signed by the mortgagees; and the attorney testified to the execution of the discharge by the mortgagees, which was in the ordinary form, and described the mortgage and where it was recorded, and that it was executed in Ohio, and was, as he thought, in accordance with the laws of Michigan, but that there was some question about the clerk's certificate, the exact nature of which he did not remember, and that he handed the discharge to the mortgagor just as it was. And it is held that the conclusion is irresistible that a full discharge of the first mortgage was executed and delivered, of which fact the second mortgagee had notice, which inured to the benefit of his assignee; and the complainant is permitted to proceed with the foreclosure, but subject to the second mortgage.

Appeal from Tuscola. (Beach, J.) Argued January 14, 1891. Decided February 27, 1891.

Bill to foreclose a mortgage. Defendant Wallace appeals. Reversed, and complainant allowed to proceed with his foreclosure against defendant Schram, but subject to the mortgage of the appellant. The facts are stated in the opinion.

*Elbridge F. Bacon*, for complainant, contended:

1. Where a note offered by complainant as the note secured by a mortgage agrees with the description contained in the mortgage in some respects, but differs in others, it may be shown by parol evidence to be the note intended to be secured; citing Jones, Mort. § 350; *Johns v. Church*, 12 Pick. 557; *Hall v. Tufts*, 18 Id. 455; *Goddard v. Sawyer*, 9 Allen, 78; *Tousley v. Tousley*, 5 Ohio St. 78; *Hurd v. Robinson*, 11 Id. 232; *Williams v. Hilton*, 35 Me. 547; *Jackson v. Bowen*, 7 Cow. 13; *McKinster v. Babcock*, 26 N. Y. 378; *Boody v. Davis*, 20 N. H. 140; *Bell v. Fleming*, 12 N. J. Eq. 13; *Duval v. McLoskey*, 1 Ala. 708; *Aull v. Lee*, 61 Mo. 160; *Stanford v. Andrews*, 12 Heisk. 664;

*Paine v. Benton,* 32 Wis. 491; *Jones v. Indemnity Co.,* 101 U.
S. 622; *Walker v. Sellers,* 11 Ind. 376; *Clark v. Houghton,* 12
Gray, 38.

2. The sixth note, being negotiable, and having been transferred
to complainant for value before maturity, carried the mortgage
with it, and he is entitled to maintain this action for its fore-
closure; citing Jones, Mort. §§ 1377, 1378; *Martin v. McReynolds,*
6 Mich. 70: *Briggs v. Hannowald,* 35 Id. 474.

3. The position taken by the counsel for the appellant, that, even
if the mortgage were reformed, still, as Tucker was not named
as grantee, he could not enforce the security, cannot be main-
tained. One having any interest in a mortgage, either legal or
equitable, may maintain a suit in equity to foreclose it; citing
Story, Eq. Pl. §§ 201, 209; Wiltsie, Mort. § 112; Jones, Mort. §
1369; *Wall v. Bissell,* 125 U. S. 382; *Batesville Institute v.
Kauffman,* 18 Wall. 151; *Waterman v. Webster,* 108 N. Y. 157;
*Martin v. McReynolds,* 6 Mich. 70; *Wilkins v. Fry,* 1 Mer. 262.

4. The complainant, having shown his title to the note, and that
it has not been paid, and that it is one of the notes secured by
the mortgage, has made out a *prima facie* case against the
defendants, and the burden of proof is upon defendant Wallace
to show that, as against him, the mortgage is released or post-
poned to his security; citing *Spear v. Hadden,* 31 Mich. 265.

5. Act No. 3, Laws of 1887, is in conflict with the constitutional
provision that no person shall be deprived of his property
without due process of law, as no notice to the mortgagee or
others interested in the mortgage of the hearing of the petition
for discharge is provided for; citing Cooley, Const. Lim. 353
*et seq.; Parsons v. Russell,* 11 Mich. 113.

6. Conceding the act to be constitutional, the petition does not
comply with the statute, which provides that it shall state the
*facts* in regard to the payment of the mortgage debt, yet the
only allegation in the petition is "that the debt secured by said
mortgage has been fully paid and satisfied by the petitioner,"
which is not a statement of any fact regarding such payment,
but of the conclusion of the petitioner that what he had done
amounted to payment; citing *Ricketson v. Richardson,* 26 Cal.
149; *Forbes v. Hyde,* 31 Id. 342; *Zube v. Weber,* 67 Mich. 58;
and, it being a special proceeding, the jurisdiction of the court
to make the order for discharge must affirmatively appear;
citing Freem. Judg. § 123.

7. The defendant, having shown the loss of the writing, was
entitled to prove its contents by parol; but the testimony intro-
duced for that purpose consists merely of the conclusions of
the witnesses Roberge and Green as to what the instrument

was, instead of showing its contents so that the court could construe it, and the testimony was incompetent, and had no tendency to show a discharge of the mortgage; citing 1 Greenl. Ev. § 558; *Zube v. Weber*, 67 Mich. 58; *Tayloe v. Riggs*, 1 Pet. 591; *U. S. v. Britton*, 2 Mason, 464; *Mariner v. Saunders*, 5 Gilm. 113; *Rankin v. Crow*, 19 Ill. 626; *Bennett v. Waller*, 23 Id. 97; *Sizer v. Burt*, 4 Denio, 426; *Edwards v. Noyes*, 65 N. Y. 125; *Russell v. Brosseau*, 65 Cal. 605; *Coxe v. England*, 65 Penn. St. 212; *Elwell v. Walker*, 52 Iowa, 256.

8. Defendant Wallace was not a *bona fide* purchaser as against complainant, so that his mortgage would be entitled to priority over complainant's lien. He possessed sufficient information to put him upon inquiry in regard to whether the mortgage had been paid and discharged, and is therefore chargeable with knowledge of the fact that it had not been paid; citing *Wilcox v. Hill*, 11 Mich. 256; *Converse v. Blumrich*, 14 Id. 109; *Hains v. Hains*, 69 Id. 581; *Oliver v. Sanborn*, 60 Id. 346.

9. Being a negotiable note not yet due, the defendant must have known it might have been assigned in the usual course of business, and might then be in the hands of an innocent holder for value, and he should have informed himself whether the outstanding note which the mortgage secured had in *fact* been paid; citing *Jones v. Smith*, 22 Mich. 360; *Keohane v. Smith*, 97 Ill. 156; *Vandercook v. Baker*, 48 Iowa, 199; *West's Appeal*, 88 Penn. St. 341; *Lee v. Clark*, 89 Mo. 553.

10. The mortgage having been recorded, all was done that was necessary to preserve the lien; and a delay of any period less than the statute of limitations, to make claim under it, did not impair the rights of complainant, either at law or in equity; citing Jones, Mort. § 558; *Dick v. Balch*, 8 Pet. 30; *Rice v. Dewey*, 54 Barb. 455.

*Dickinson, Thurber & Stevenson,* for appellant, contended for the doctrine stated in the opinion.

GRANT, J. Complainant was the holder of a promissory note for $114.37, secured by a mortgage on real estate, and filed his bill to foreclose the mortgage. Defendants Roberge and Schram were the makers of the note. The mortgage given as security was executed by Roberge to defendant Sweet and Asa Fuller. Defendant Wallace was made a party as a subsequent mortgagee. Decree was

entered for complainant, and defendant Wallace alone appealed.

There is but little, if any, dispute as to the material facts in the case, which are as follows: October 15, 1879, Roberge and Schram bought from one John H. Tucker a saw-mill for $800. Fuller and Sweet had a claim upon it for $685.63. Roberge and Schram executed six promissory notes, aggregating $800, the total purchase price. Five of these notes were made payable to Fuller and Sweet, and the sixth, the note in question, to John H. Tucker. It was payable in three years from date, with interest at 7 per cent. The mortgage covered the six notes, which were described in the mortgage as—

"Six promissory notes, bearing even date herewith, executed by John B. Roberge and Alexander Schram to said parties of the second part."

The bill is in the usual form of a foreclosure bill, except that it alleges a mistake in the description of the note in question, and prays for a correction of the mistake. Tucker was present at the execution of this mortgage, was one of the witnesses to it, and shortly afterwards transferred the note to one Ransom Bartlett, who in turn sold and transferred it to complainant. There was written across the face of this note the words, "Secured by mortgage." Roberge and Schram sold a half interest in the mill to one John Hopson, and arranged with Fuller and Sweet for the payment of the first five notes by Hopson. Hopson paid them. The note in suit has not been paid; at least the testimony does not show this fact, and the burden of proof in this respect was upon the defendants. June 8, 1888, Roberge deeded the land to Schram, who on the same day executed a mortgage for $450 to one William Cooper. August 28, 1888, this mortgage was assigned by Cooper to defendant

Wallace, who claims to be a *bona fide* purchaser without notice of complainant's note and his interest in the mortgage.

On December 20, 1887, defendant Roberge presented a petition to the circuit court for the county of Tuscola, in which he set forth this mortgage, and stated that the debt secured thereby had been fully paid and satisfied, and on the same day the court entered upon its journal a certificate that the debt secured by said mortgage was fully paid and satisfied, and ordered the same to be discharged, and declared fully paid and satisfied. This proceeding was in pursuance of Act No. 3, Laws of 1887 (3 How. Stat. § 5705). Schram applied to the firm of A. D. Slaght & Co. for a loan upon this land. Slaght & Co. acted as the agents for Mr. Cooper in effecting the loan. Before this loan was made, a member of this firm by the name of Carson saw defendants Roberge and Schram about the mortgage to Sweet and Fuller. He does not remember particularly what Schram said, but says Roberge told him—

"That he had obtained a discharge of the mortgage; that his house burned up, and that the discharge was burned in the house before it had been recorded."

Mr. Carson also saw the proceeding in the circuit court, and the action of the court in declaring the mortgage paid and ordering its discharge. No other efforts were made on behalf of Mr. Cooper to ascertain whether the Sweet and Fuller mortgage had been paid or discharged.

Whether or not this mortgage was in fact discharged depends upon the effect to be given to the testimony of defendant Roberge and John C. Green, whose testimony on this point it is necessary to give quite fully. Roberge testifies substantially as follows:

"I obtained a discharge of this mortgage about a year

after I had bought of Sweet and Fuller. It got lost in
the fire. It was in the trunk that burned up in that
fire. I obtained the discharge through Mr. Green, an
attorney. Mr. Hopson and Mr. Green obtained it for
me. Green acted for me in procuring this discharge
from Fuller and Sweet, and delivered it to me as a dis-
charge of this mortgage. It purported to be signed by
Sweet and Fuller. It was witnessed and acknowledged."

Mr. Green testified as follows:

" Fuller and Sweet executed a discharge of this mort-
gage to Roberge. I saw the discharge. It was drawn up
in the ordinary form of a discharge, describing the mort-
gage, and where it was recorded. It was signed by Fuller
and Sweet. I think I examined it to see whether it was
properly executed. I think it was. They were in Ohio.
I had the discharge made out for them to sign. I think
the discharge was in accordance with the laws of this
State, but I think there was some question about the
clerk's certificate in Ohio,—something of that kind, but
I don't remember just what it was now. I handed it to
Roberge just as it was."

The only other evidence showing the discharge is a let-
ter written by the witness Green on November 9, 1887,
to the attorney who prepared and filed the petition for
Mr. Roberge to secure the order of discharge from the
court. It reads as follows:

" *My Dear Sir:* This man Roberge wants a mortgage
discharged in your county. I got him a discharge in '81,
and he kept it at home, and did not record it, and it
was burnt up in the fire of '81; and, as I was the
attorney for Fuller and Sweet, and got him the dis-
charge, I am a good witness for him to satisfy the court,
as I have no interest in the matter, and he resides in
your county, and the court is handy for you; and by
petition to the court he can get a legal discharge, as
Fuller is dead. I think this would be the best way to
clear off the mortgage, as Roberge's and my evidence
would be sufficient. I am glad to hear you are in prac-
tice, and remain your friend."

Upon this evidence the conclusion is irresistible that a
full discharge of this mortgage was executed and deliv-

ered. Of this fact the second mortgagee, Mr. Cooper, had notice; and his assignee, the defendant Wallace, is entitled to the benefit of that notice. Subsequent mortgagees without notice may rely upon the evidence of discharge as shown by the record. A discharge is only conclusive as to those who purchase in good faith. A discharge may be recorded, and still the mortgage be not discharged. A subsequent mortgagee with notice of that fact will not be protected by the record. It is not necessary that the discharge be recorded in order to protect a subsequent purchaser or mortgagee. When such an one receives reliable information, upon which he relies, that a mortgage has been discharged, he will be protected if it turns out that the mortgage was in fact discharged. The defendant Wallace was so informed. He in good faith acted upon such information, and his rights, therefore, are paramount to those of the complainant.

There was nothing upon the record to show that any other person aside from Sweet and Fuller had any interest in the mortgage given to them. It is also quite apparent that there was no mistake in the mortgage itself. Tucker was present when the notes and mortgage were drawn, and they were evidently drawn in the manner they were with the full understanding of the parties. It follows, therefore, that complainant may proceed with his foreclosure as against Schram, but subject to the mortgage of the defendant Wallace, who will recover costs in both courts.

The other Justices concurred.