## LINN v. LINN.

EQUITY JURISDICTION—MORTGAGES—REVIVOR—FORGED SIGNATURE —FORECLOSURE.

Where the owner of two purchase-money mortgages discharged them, and accepted in their stead a new mortgage, which, while it purported to be signed by the mortgagor's wife, was in fact forged as to her, and such mortgage was foreclosed and the premises bid in by the mortgagee's administrator in the belief that the wife's claim of forgery was merely a pretense to secure dower and homestead rights, such administrator is entitled, upon its subsequently appearing that the wife's claim is true, to maintain a bill in equity to revive the earlier and genuine mortgages, the same as if the fraudulent mortgage had not been foreclosed. *Palmer* v. *Sharp*, 112 Mich. 420, followed.

Appeal from Ingham; Person, J. Submitted October 27, 1899. Decided December 2, 1899.

Bill by Peter Linn, administrator with the will annexed of the estate of Lawrence Linn, deceased, against Kate F.

Linn and others, to revive certain mortgages. From a decree dismissing the bill on demurrer, complainant appeals. Reversed.

*Smith & Hood* (*John J. Zimmer*, of counsel), for complainant.

*A. M. Cummins* and *L. B. McArther*, for defendants.

Moore, J. This proceeding is in chancery. The bill of complaint states, in substance, as follows: The complainant is administrator with the will annexed of the estate of Lawrence Linn, deceased, who was a resident of Wyoming county, N. Y. The defendant Kate F. Linn is the widow, and the remaining defendants are the children and heirs at law, of John B. Linn, a late resident of the county of Ingham, and a son of said Lawrence Linn. John B. Linn died about February 9, 1892. Lawrence Linn died some time afterwards. Late in the winter of 1883, John B. Linn moved into the county of Ingham, and purchased of John J. Rehle, Sr., the S. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 8, in township 3 N., range 1 E., for a consideration of $3,100, paying a portion in money and giving back a purchase-money mortgage for the sum of $1,600. In order to procure a portion of the purchase price, and to establish the homestead, said John B. Linn procured of Amos D. George the sum of $1,250 by mortgage dated March 1, and acknowledged April 5, 1883, on the premises so purchased. On the 26th day of June in the same year, said John B. Linn loaned from his father, Lawrence Linn, the sum of $1,600 by way of mortgage on said premises, for the purpose of paying, and with which he actually did pay, the Rehle purchase-money mortgage, and on the same day Rehle discharged said purchase-money mortgage. On the 4th day of March, 1886, Lawrence Linn purchased the George mortgage. Shortly prior to the 27th day of June, 1888, John B. Linn negotiated with his father for a renewal and extension of time for the payment of the mortgages held by him, and was to give to

him a mortgage on the premises, signed by both himself and his wife, Kate F. Linn. On June 27, 1888, John B. Linn went to B. D. York, a lawyer and notary public residing at Williamston, Mich., and caused to be executed a note and mortgage for the sum of $3,000, payable 10 years after date, with interest after October 1, 1888, at the rate of 6 per cent., with the privilege of paying $50 or more at any time. This third mortgage covered the property hereinbefore described. It purports to have been executed and acknowledged by John B. Linn and by Kate F. Linn, his wife. Lawrence Linn was not present at the time said mortgage was executed, and received the same believing it was a genuine mortgage executed by both John B. Linn and Kate F. Linn, his wife; and because of such belief, and relying upon it, he, on the same day, discharged the two mortgages held by him.

After the death of John B. Linn, Kate F. Linn made several payments of interest on the mortgage, until the death of said Lawrence Linn. After the death of Lawrence Linn, Kate F. Linn denied that she joined in the execution of said mortgage, and refused to pay further interest thereon. Some time shortly prior to the 6th day of April, 1897, through W. F. Cairns, an attorney residing at Williamston, complainant caused said mortgage to be foreclosed by advertisement. On the foreclosure sale the whole of said premises was purchased by said administrator in behalf of said estate on the 1st day of July, 1897, for the full amount of the mortgage then due, and costs of foreclosure. At the time of the sale, Kate F. Linn served a notice upon the sheriff making such sale that said mortgage was never signed by her, and claimed dower and homestead rights in said mortgaged premises, and claimed that such sale should be made subject to her homestead and dower rights. Complainant, at the time of said foreclosure sale, and for a long time thereafter, believed that said Kate F. Linn executed the mortgage in question. Mr. York, the attorney and notary by and before whom said mortgage was made and acknowledged,

was a person of good standing in the village of Williamston, and a man worthy of credit and belief, and complainant believed he would not have made and signed the certificate of acknowledgment had said Kate F. Linn not executed said mortgage, and complainant believed that the claim of said Kate F. Linn to the effect that she did not execute the said mortgage was only a pretense. The whole of the mortgaged premises was a very scant security for the sum due on said premises, and complainant purchased said premises for the full amount of said mortgage, together with costs, because he then believed that said Kate F. Linn executed said mortgage notwithstanding said pretense to the contrary, and because he had been advised by said Cairns to bid the full amount of said mortgage and costs, for the reason that no decree for deficiency could be obtained for any balance due in case the premises were purchased for less.

During the month of July, 1898, complainant, still acting under the advice of said Cairns, commenced a proceeding before the circuit court commissioner to get possession of the said mortgaged premises; and, at the trial of said matter before said commissioner, said Kate F. Linn testified as a witness in her own behalf that she never signed said mortgage, and claimed dower and homestead rights in the premises, by reason of which said commissioner dismissed said complaint, because the trial of the title to real estate was involved. Complainant, after hearing such testimony, became convinced that said Kate F. Linn did not execute said mortgage; and the amended bill states that Kate F. Linn did not execute the last-named mortgage. Said bill of complaint is filed in this cause to revive and foreclose the mortgage given by said John B. Linn to said Amos D. George, and afterwards assigned to said Lawrence Linn, and also the first mortgage, of $1,600, given by said John B. Linn and wife to said Lawrence Linn. The bill asks that the mortgage foreclosed by said administrator may be declared defective, imperfect, and partially invalid, and insufficient to bind the homestead

and dower rights of defendants, because said mortgage was not executed by said Kate F. Linn, and that complainant may be subrogated to the rights which Lawrence Linn held under said mortgages. It also contains a general prayer for relief.

The defendants, by their demurrer, and in argument, urge the following, among other, objections against the relief sought in the bill:

1. That complainant has a plain, adequate remedy at law.

2. That the bill of complaint does not state such facts as, if true, would enable the court to grant any relief whatever.

3. That, if the last mortgage designated in said bill of complaint was signed by Kate F. Linn, the complainant is now the owner of the fee simple in said lands, and has a complete, adequate remedy at law to gain possession of the same.

4. If said mortgage was not signed by her, that fact was well known to the agent and attorney of said Lawrence Linn, and said complainant has not urged any fraud on the part of said defendant, or her husband, or any other person. The allegations of fraud contained in said bill of complaint are too indefinite and uncertain to be made the basis of any relief whatever.

5. The facts stated in said bill, taken as a whole, do not entitle said complainant to any relief in a court of equity.

6. On the argument of said demurrer, said defendants urge the further objection, *ore tenus*, that complainant was not entitled to have the $1,600 Linn mortgage revived, for the reason that the certificate of acknowledgment does not show that the execution of said mortgage was acknowledged by her, and that by reason thereof said mortgage was not a valid release, *pro tanto*, of her dower rights.

The circuit judge sustained the demurrer. He was of the opinion that the fraud alleged in the bill is sufficient to entitle complainant to relief, and said he would have no doubt of the equity of the bill had it not been that, after the administrator knew of the claim of Mrs. Linn, he foreclosed the mortgage, and bought the land at the foreclos-

ure. This had the effect, in his opinion, to give him a valuable interest in the land, which has ripened into a title in fee. This title he holds, and does not, in the bill, offer to surrender. The circuit judge was also of the opinion that, while the administrator might bid in the land, after purchasing it he had no power to sell it, or to surrender the title, except upon license by the probate court.

The solicitors have filed able briefs, in which the various phases of the case are carefully discussed. We do not deem it necessary to follow that discussion in this opinion. We agree with the learned circuit judge that the case presented by the bill is an equitable one. It appears by the bill that all the money obtained from the elder Linn was applied upon the payment of this real estate, in which the widow of John B. Linn now claims homestead and dower interests, which she seeks to preserve, because the mortgage which was foreclosed by newspaper advertisement was not in fact executed by her, though it purported to be executed and acknowledged by her. If her claim is true,—and for the purposes of this case it must be regarded as true,—a forged mortgage was palmed off upon the elder Linn as genuine, and, relying upon its genuineness, he was induced to discharge two mortgages which he then held. One of these mortgages was given to him for money he had loaned his son to enable him to take up the Rehle purchase-price mortgage. The other was given to Mr. George for money he let John B. Linn have to pay directly upon the purchase of the farm. The equities of the bill are strongly with the complainant. *Fournier* v. *Chisholm*, 45 Mich. 417; *Converse* v. *Barnard*, 114 Mich. 622. The right of complainant to have the earlier mortgages revived because of the fraud which was perpetrated upon the elder Linn, although the administrator had caused the last mortgage to be foreclosed, supposing it to be a genuine mortgage, is very clearly established in the late case of *Palmer* v. *Sharp*, 112 Mich. 420.

If the circuit judge was right in holding that, after the

purchase of the land at the foreclosure sale, the administrator could not surrender it, his offer to do so, in the bill of complaint, would be an idle ceremony, and to us it seems an additional reason why the court of equity, which can work out complete relief to all the parties, and protect all their rights, should take jurisdiction.

The decree of the court below is reversed, and the case remanded. The defendants are given 15 days in which to answer after a copy of this decree is served upon their solicitors.

The other Justices concurred.