*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WG ENTERPRISES, LLC and WILLIAM
GIFFORD,

UNPUBLISHED
February 24, 2022

Plaintiffs/Counterdefendants-
Appellees,

v

No. 354862
Wayne Circuit Court
LC No. 19-000822-CB

US BANK TRUST, NA, as Trustee of AMERICAN
HOMEOWNER PRESERVATION TRUST SERIES
2014B,

Defendant/Counterplaintiff-Appellant,

and

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.,

Defendant.

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and CAMERON, JJ.

PER CURIAM.

Defendant US Bank Trust, NA ("US Bank Trust"), as Trustee of American Homeowner Preservation Trust Series 2014B, appeals as of right the trial court's judgment in favor of plaintiffs, WG Enterprises, LLC ("WG Enterprises") and William Gifford ("Gifford"), on their claim for slander of title with respect to property located at 1992 Delaware Street in Detroit (the "Delaware property"). US Bank Trust also appeals the trial court's prior order that an assignment of a prior mortgage on the Delaware property to US Bank Trust, a rescission of the discharge of that mortgage, and a sheriff's deed after foreclosure of the mortgage all be rescinded and removed from the Delaware property's chain of title, and that title to the Delaware property be quieted in favor of plaintiffs. Defendant Mortgage Electronic Registration Systems, Inc ("MERS") was dismissed by stipulation. We affirm the trial court's order quieting title to the Delaware property in favor of plaintiffs and ordering that the specified recorded documents be rescinded and removed from the

property's chain of title, but we reverse the order granting plaintiffs summary disposition on their claim for slander of title, vacate the judgment for plaintiffs on that claim, and remand for further proceedings.

## I. BACKGROUND

At issue in this appeal is the foreclosure of a mortgage on the Delaware property. On May 27, 2004, Raymond E. Green and Ethel Bernice Green conveyed the Delaware property to Damon Green by warranty deed. On April 6, 2007, Damon Green took out a mortgage in favor of Impac Funding Corporation, doing business as Impac Lending Group, and this mortgage was recorded on June 19, 2007. On March 7, 2011, Bank of America, N.A., instructed one of its subsidiaries, which was "act[ing] as a foreclosure trustee for loans in default," to release the mortgage lien on the Delaware Property, even though the loan debt had not been fully paid. It is undisputed that a notice of discharge of the mortgage was executed on March 29, 2011, and the notice of discharge was recorded by MERS on April 4, 2011. The discharge of mortgage specifically provided that the April 6, 2007 mortgage executed by Damon Green is "discharged," but that "[t]he debt secured by the mortgage described above has been partially paid." The discharge of mortgage stated, in pertinent part:

> Therefore, this discharge does not constitute a satisfaction of the debt. Absent a separate agreement in writing providing otherwise, the debt remains in full force and effect. *This discharge serves only to release the lien of the mortgage upon the above described property*. [Emphasis added.]

Thereafter, on June 30, 2014, Damon Green conveyed the Delaware property to Brandon Green by quitclaim deed. On October 31, 2014, plaintiff Gifford purchased the Delaware property from Brandon Green for $60,000 and received a warranty deed from Brandon. Two years later, on September 14, 2016, Gifford conveyed the Delaware property to his affiliated company, WG Enterprises, by quitclaim deed. However, approximately two months before this conveyance, on July 13, 2016, MERS assigned the prior Delaware mortgage to US Bank Trust, and the assignment was recorded on August 2, 2016. Also on July 13, 2016, US Bank Trust and/or MERS executed a rescission of release of mortgage, which was recorded with the Wayne County Register of Deeds on August 10, 2016. The rescission of release of mortgage provided, in pertinent part:

> On March 29, 2011, [MERS] inadvertently and mistakenly executed a Discharge of Mortgage for Corporation which was later recorded on April 4, 2011 . . .

> Such Release by MERS was erroneous and inadvertent with the obligation secured by the Mortgage remaining unsatisfied and outstanding. *Therefore, MERS hereby, cancels and rescinds the Discharge of Mortgage for Corporation and the Mortgage remains in full force and effect against the property located at [1992 Delaware]*. [Emphasis added.]

Without the knowledge of Gifford or WG Enterprises, US Bank Trust foreclosed on the mortgage in 2018, and the Delaware property was sold at a sheriff's sale on February 8, 2018.

WG Enterprises thereafter filed this action, alleging that US Bank Trust had no right to conduct the foreclosure proceedings and seeking to quiet title in the Delaware property in its favor. WG Enterprises also alleged a claim for slander of title. US Bank Trust filed a counterclaim for declaratory relief, alleging that WG Enterprises had record notice of US Bank Trust's asserted mortgage interest in the Delaware property before it acquired title from Gifford, and therefore it "took [title] subject to the interest of US Bank [Trust]." The parties filed cross-motions for summary disposition addressing whether Gifford and WG Enterprises were bona fide purchasers for value, whether US Bank Trust's foreclosure was valid, and whether US Bank Trust slandered the title to the Delaware property. Following a hearing, the trial court *sua sponte* ordered, over US Bank Trust's objection, that Gifford was to be added as a party plaintiff and counterdefendant to the lawsuit. The court then granted plaintiffs' motion for summary disposition under MCR 2.116(C)(10), denied US Bank Trust's cross-motion for summary disposition under MCR 2.116(C)(10), and dismissed US Bank Trust's counterclaim. The trial court ordered that title to the Delaware property be quieted "against US Bank [Trust]" and in favor of plaintiffs in "fee simple absolute," and that the recorded "rescission of release of mortgage," the assignment of the mortgage, and the sheriff's deed after foreclosure were all "rescinded and removed from the chain of title." After allowing additional briefing on the issue of damages, the trial court entered a judgment awarding plaintiffs damages of $18,782.80 on the slander-of-title claim. This appeal followed.

## II. ADDITION OF GIFFORD AS A PARTY TO THE PROCEEDINGS

Preliminarily, US Bank Trust argues that the trial court erred by *sua sponte* deciding to add Gifford as a plaintiff and counterdefendant to this action. We disagree.

"The decision whether to drop or add a party to an action rests within the discretion of the trial court." *Ombrello v Montgomery Ward Long Term Disability Trust*, 163 Mich App 816, 824; 415 NW2d 658 (1987). "A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes, or when it makes an error of law." *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 320; 900 NW2d 680 (2017) (quotation omitted).

MCR 2.207 provides:

> Misjoinder of parties is not a ground for dismissal of an action. Parties may be added or dropped by order of the court on motion of a party *or on the court's own initiative at any stage of the action and on terms that are just*. When the presence of persons other than the original parties to the action is required to grant complete relief in the determination of a counterclaim or cross-claim, the court shall order those persons to be brought in as defendants if jurisdiction over them can be obtained. A claim against a party may be severed and proceeded with separately. [Emphasis added.]

Similarly, MCL 600.2932, which governs actions to determine interests in land, provides, in pertinent part:

> (1) Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession

of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

US Bank Trust does not argue that the trial court was not generally empowered to add Gifford as a party. Rather, US Bank Trust argues that the trial court erred in doing so because there was no actual controversy between itself and Gifford. More specifically, it argues that because Gifford quitclaimed the property to WG Enterprises, and in the absence of some abuse of the corporate form, Gifford therefore has no more interest in the property than any of the Greens.

US Bank Trust cites *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 96-98; 535 NW2d 529 (1995), for the proposition that joinder of a party is impermissible unless there is an "actual controversy" between that party and some other party already in the action. However, the holding in *Hoffman* did not go quite so far: rather, it held that a party-plaintiff could not join a party against which it had no claim pursuant to MCR 2.205(A). The trial court's purpose for adding Gifford as a party was to discern the priority of interests in the Delaware property. Specifically, it was undisputed that WG Enterprises acquired its interest in the property from Gifford, whom the trial court believed was a bona fide purchaser for value, whose interest in the property could impact whether US Bank Trust had a superior interest in the property. Indeed, it is undisputed that Gifford was the Delaware property's owner of record at the time the US Bank Trust executed and recorded the rescission of the discharge of the prior mortgage, and that Gifford was the sole member of WG Enterprises, to whom he later conveyed the Delaware property. The addition of Gifford as a party was intended to facilitate the court's analysis and ultimate resolution of the competing property interests at stake.

US Bank Trust argues that the late addition of Gifford caused it prejudice, because it had not been prepared to argue whether a prior property owner had been a bona fide purchaser. When a member of a limited liability company conveys property by warranty deed to the limited liability company, the member no longer has an interest in the property. *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 220-221; 880 NW2d 793 (2015). However, the evidence shows that Gifford conveyed the property to WG Enterprises by quitclaim deed. Acquiring property by a quitclaim deed only conveys what the grantor had, but the fee owner of property could "be divested of his title by a *bona fide* purchaser without notice of such facts as were sufficient to put a prudent man upon inquiry." *Peters v Cartier*, 80 Mich 124, 128-129; 45 NW 73 (1890).[1] Therefore, it remained potentially important whether Gifford had been a bona fide purchaser. Furthermore, the record indicates that WG Enterprises had argued that Gifford and itself were one and the same, and it argued that it stood in Gifford's shoes as a bona fide purchaser. While possibly an abuse of the

---

[1] In *Peters*, the owner of property granted the property to the plaintiff, who recorded a deed and later a mortgage that contained some flaws and omissions; subsequently, a land speculator who had actual knowledge of the sale persuaded the original grantor to convey a quitclaim deed to the same property and then quitclaimed it to the defendant, who had actual knowledge of the plaintiff's mortgages. *Peters*, 80 Mich at 126-128. Under those circumstances, our Supreme Court held that the defendant was not a bona fide purchaser and that one who takes by quitclaim deed does so at his own risk. *Id*. at 128-129.

corporate form, as a practical matter, Gifford clearly had an interest in the property through WG Enterprises, even if that interest was legally indirect.

The court did not take any action that was unjust, and its decision did not otherwise contravene the authority of MCR 2.207. Under the circumstances, the trial court's decision was within the range of reasonable and principled outcomes, and therefore, was not an abuse of discretion.

## III. REINSTATEMENT OF THE MORTGAGE

US Bank Trust next argues that the trial court erred by concluding that Gifford and WG Enterprises were bona fide purchasers for value, and therefore, US Bank Trust was not entitled to rescind the discharge of the mortgage from the previous property owner and thereby reinstate the prior mortgage interest in the Delaware property. We disagree.

In Michigan, it is well-established that a discharged mortgage may be reinstated in some circumstances. *Linn v Linn*, 122 Mich 130, 135-136; 80 NW 1000 (1899). In deciding whether a mortgage may be reinstated, a court will weigh the equities, the injury to the opposing party, the interests of society, and matters of public policy. *Downing v Hill*, 165 Mich 559, 560-561; 130 NW 1115 (1911). In *Plasger v Leonard*, 316 Mich 174, 176; 25 NW2d 156 (1946), our Supreme Court recognized that, under equitable principles, the invalid discharge of a mortgage may be set aside or cancelled, except where the rights of third parties may prevent such an occurrence. Moreover, even when the rights of a third party are at issue, a court may allow the setting aside of a discharge or release of a mortgage if the third party is not a bona fide purchaser for value. *Id*. at 180. In *Plasger*, the discharge of the mortgage was not supported by consideration, and it was given with the understanding that a new mortgage would be secured, which did not take place. *Id*. at 176-180. Our Supreme Court agreed with the trial court's determination that third-party purchasers of the subject property were not bona fide purchasers for value because they took title aware of the prior mortgage on the property, "and knew that the discharge of the mortgage had not [sic] validity." *Id*. at 180.

In *Ferguson v Glassford*, 68 Mich 36, 46; 35 NW 820 (1888), our Supreme Court recited the general legal principle that a mortgage discharged in error "may be restored in equity, and given its original priority as a lien, when the rights of innocent third parties will not be affected." Specifically, referring to subsequent mortgagees and purchasers, the Court stated:

> If they become mortgagees or purchasers after the discharge is placed upon record, they are entitled to the same protection which the recording laws afford to subsequent purchasers and incumbrances in good faith, as against unrecorded conveyances, who can be affected only by actual notice, or notice of such facts as should have put them upon inquiry. The rule was applied by this court in *Sheldon v Holmes*, 58 Mich 138; 24 NW Rep 795 (1888).

In *Ferguson*, 68 Mich at 37, 39, 45-46, the parties agreed that the mortgage in dispute was mistakenly discharged, and our Supreme Court noted that the defendant Glassford had received information that would have given an ordinarily prudent person constructive notice, as well as actual notice, that the mortgage in dispute was still an existing encumbrance on the property.

Conversely, in *Lowry v Bennett*, 119 Mich 301, 302-303; 77 NW 935 (1899), a mortgagee sought to foreclose on a mortgage after it had been erroneously discharged, and the Supreme Court held that the defendant, who purchased the land relying on the discharge of the mortgage, was entitled to protection as a good-faith purchaser.

Michigan is "a race-notice state" and under MCL 565.29, the holder of an interest in real estate who first records his or her interest will, as a general matter, have priority over subsequent purchasers or interest holders. *Wells Fargo Bank, NA v SBC IV REO, LLC*, 318 Mich App 72, 96; 896 NW2d 821 (2016); *Penrose v McCullough*, 308 Mich App 145, 152; 862 NW2d 674 (2014).

MCL 565.29 provides:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

As MCL 565.29 indicates, for the subsequent interest holder to take priority over a prior conveyance, the later interest holder must acquire the conveyance in "good faith," which means that the good-faith purchaser "purchases without notice of any defect in the vendor's title." *Penrose*, 308 Mich App at 152. Likewise, a party who is put on notice of a potential defect in the vendor's title and does not undertake additional inquiry into the potential rights of a third party cannot be characterized as a good-faith purchaser. *Id*. at 152-153. Notice can be actual or constructive, with constructive notice being defined as "notice . . . imputed to a person concerning all matters properly of record." *Id*. at 153 (quotation marks and citation omitted). Notice has also been defined as:

> When a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them, he is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed. [*Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006) (quotation omitted).]

Here, the trial court quieted title to the Delaware property on the basis of its conclusion that both plaintiffs were bona fide purchasers for value, and thus, the rescission of discharge of mortgage and the foreclosure proceedings that followed were ineffective against both of them. Accordingly, the trial court also ordered that the rescission of the discharge of mortgage, the assignment of the mortgage, and the foreclosure by US Bank Trust were to be rescinded and removed from the property's chain of title.

US Bank Trust argues that WG Enterprises cannot be a bona fide purchaser because it did not acquire title until after the rescission of release of mortgage had been filed. However, a bona fide purchaser without notice can divest the fee owner of title. *Peters*, 80 Mich at 128. Therefore,

if Gifford had been a bona fide purchaser without notice, Gifford would have had valid title to convey to WG Enterprises. The discharge of mortgage was recorded more than 3½ years before Gifford purchased the Delaware property for value. US Bank Trust argues that there is a question of fact whether Gifford could have been a bona fide purchaser without notice. However, US Bank Trust only relies on the fact that the discharge of mortgage stated on its face that the underlying debt had not been fully paid. We are not persuaded that an ordinary person would suspect that the mortgage lien had not therefore been intentionally discharged. On the contrary, the discharge of mortgage clearly and unambiguously stated that the mortgage lien against the property was being released despite that the underlying debt remained unsatisfied. Under the circumstances, the discharge of mortgage cannot serve as constructive notice of any facts that the mortgage was not intended to be discharged, contrary to its express terms. Further, US Bank Trust did not present any evidence that Gifford had notice of any other facts or circumstances that should have caused him to believe that the property in fact continued to be subject to a mortgage lien. Thus, US Bank Trust failed to establish a genuine issue of material fact regarding Gifford's status as a bona fide purchaser for value with respect to the Delaware property.

While the trial court focused on Gifford's status as a bona fide purchaser for value without specifically explaining whether that affected US Bank Trust's right to rescind the prior discharge of mortgage and thereby reinstate the original mortgage, it is apparent from the trial court's ruling as a whole that it determined that it would be inequitable to allow the mortgage to be reinstated given Gifford's intervening purchase and status as a bona fide purchaser. Therefore, as between US Bank Trust and Gifford, Gifford held a superior interest in the Delaware property, which he subsequently conveyed to WG Enterprises by quitclaim deed on September 14, 2016.

MCL 565.3 provides that "[a] deed of quit claim and release, of the form in common use, shall be sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale." See also *Eastbrook Homes v Treasury Dep't*, 296 Mich App 336, 349; 820 NW2d 242 (2012) (recognizing that a quit claim deed will convey the grantor's complete interest in real property without warranting that the title is valid). As discussed, a person who has knowledge or notice of a defect in title may not hide behind a quitclaim deed to become a bona fide purchaser. However, Gifford was a bona fide purchaser and had valid title to convey, and therefore WG Enterprises acquired all of Gifford's interest in the Delaware property, which was superior to US Bank Trust's asserted interest. The trial court correctly concluded that as between WG Enterprises and US Bank Trust, WG Enterprises also possessed the superior claim of title.

## IV. VALIDITY OF FORECLOSURE

US Bank Trust also argues that the trial court erred by setting aside its foreclosure by advertisement. We disagree.

Although US Bank Trust argues that its foreclosure by advertisement was appropriate under MCL 600.3204, any foreclosure proceeding was dependent upon US Bank Trust having a valid mortgage interest in the Delaware property. As explained earlier, the mortgage had been discharged and it could not be reinstated against Gifford, a bona fide purchaser for value. Because US Bank Trust did not hold a valid mortgage interest in the property, it could not foreclose on the mortgage by advertisement under MCL 600.3204. Accordingly, the trial court did not err by setting aside the foreclosure and the sheriff's deed of sale.

## V. SLANDER OF TITLE

US Bank Trust also argues that the trial court erred by holding as a matter of law that it slandered the title to the Delaware property by recording the rescission of release of mortgage and foreclosing on the mortgage. We agree.

In *Anton, Sowerby & Assoc, Inc, v Mr C's Lake Orion, LLC*, 309 Mich App 535, 546; 872 NW2d 699 (2015), this Court recognized that claims for slander of title in Michigan have both a common-law and statutory foundation, see MCL 565.108, and that "to establish either, a claimant must show falsity, malice, and special damages." At common law, slander of title was acknowledged as a remedy for the "malicious publication of false statements that disparage a plaintiff's right in property." *Id*. (citation and quotation marks omitted). This Court, quoting *Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 596; 848 NW2d 425 (2014), explained how a party may demonstrate the element of malice:

> The crucial element is malice. *A slander of title claimant must show some act of express malice, which implies a desire or intention to injure. Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury*. A plaintiff may not maintain a slander of title claim if the defendant's claim under the mortgage or lien was asserted in good faith upon probable cause or was prompted by a reasonable belief that the defendant had rights in the real estate in question . . . [(citations and quotations omitted, emphasis added).]

The record reflects that US Bank Trust was aware of a potential defect in its asserted mortgage interest in the property when it initiated foreclosure proceedings because of the prior discharge of mortgage, and it recorded the rescission of discharge to address that defect to allow it to proceed to foreclosure. As explained, US Bank Trust was not in a position to foreclose on the mortgage after it was discharged, and the property was conveyed to a bona fide purchaser for value. At the time of the foreclosure, however, US Bank Trust believed that it had legal authority to foreclose after it recorded the rescission of the discharge. The evidence in the record does not establish that, by recording the rescission of release of mortgage or the sheriff's deed of foreclosure, US Bank Trust acted with the intention or desire to injure WG Enterprises, or that the documents were knowingly filed with the intention to cause injury to WG Enterprises. Therefore, to the extent that the trial court concluded that the recording of the rescission of release of mortgage and the sheriff's deed of foreclosure amounted to slander of title, the trial court erred by granting WG Enterprise's motion for summary disposition with respect to the slander-of-title claim. Accordingly, we reverse the portion of the trial court's order granting plaintiffs summary disposition on the slander-of-title claim, vacate the judgment for plaintiffs, and remand for further proceedings.

## VI. CONCLUSION

In sum, the trial court did not err by quieting title to the Delaware property in favor of plaintiffs and ordering that the assignment of the prior mortgage on the Delaware property to US Bank Trust, the rescission of the discharge of that mortgage, and the sheriff's deed after foreclosure of the mortgage were all to be rescinded and removed from the Delaware property's chain of title. However, because the evidence did not establish as a matter of law that US Bank Trust acted with

malice, the trial court erred by granting plaintiffs summary disposition on their claim for slander of title. Accordingly, we vacate the judgment for plaintiffs on that claim, and remand for further proceedings.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Thomas C. Cameron